AO 442

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

v.

Derek Loville (8)

16- 6021 MJ

### WARRANT FOR ARREST

Case Number:   15cr2310-WQH

# NOT FOR PUBLIC VIEW

To:   The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest       Derek Loville (8)

Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

☒ Indictment   ☐ Information   ☐ Complaint   ☐ Order of Court   ☐ Violation Notice   ☐ Probation Violation Petition
☐ Pretrial Violation

charging him or her with (brief description of offense):

18:1962(d).- Racketeering Conspiracy to Conduct Enterprise Affairs (RICO Conspiracy);
21:841(a)(1), 846 – Conspiracy to Distribute Narcotics;
18:981(a)(1)(C), 982, 1955(d), 1963, 21:853, 28:2461(c) - Criminal Forfeiture

I hereby attest and certify on __1__/__13__/__2016__
that the foregoing document is a full, true and correct
copy of the original on file in my office and in my legal
custody.

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ Deputy

In violation of Title   See Above   United States Code, Section(s)

John Morrill

Name of Issuing Officer

Clerk of the Court

Title of Issuing Officer

s/ N. Peltier   (SEAL)

Signature of Deputy

1/13/2016; San Diego, CA

Date and Location

Bail fixed at $      No Bail      by      The Honorable Jan M. Adler

Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

FILED

JAN 1 2 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                      DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

March 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        v.<br><br>OWEN HANSON (1),<br>        aka "O-Dog",<br>LUKE FAIRFIELD (3),<br>KENNY HILINSKI (4),<br>GIOVANNI BRANDOLINO (5),<br>        aka "Tank",<br>DANIEL PORTLEY-HANKS (6),<br>JACK RISSELL (7),<br>        aka "Animal",<br>DEREK LOVILLE (8),<br>CHARLIE  D'AGOSTINO (9),<br>MARLYN VILLAREAL (10),<br>DYLAN ANDERSON (11),<br>TIM BRYAN (12),<br>JIM MUSE (13),<br>JEFF BELLANDI (14),<br>        aka "Jazzy",<br>CURTIS CHEN (15),<br>JAMES DULEY (16),<br>DEE FOXX (17),<br>KHALID PETRAS (18),<br>RAHUL BHAGAT (19),<br>DAVID KIPPER (20),<br>BRYAN MATAYA (21),<br>TODD OLDHAM (22),<br>DANIEL ORTEGA (23),<br><br>                    Defendants. | Case No. <u>15CR2310-WQH</u><br><br><u>I N D I C T M E N T</u><br>    (Superseding)<br><br>Title 18, U.S.C., Sec. 1962(d) —<br>**Racketeering Conspiracy to<br>Conduct Enterprise Affairs<br>(RICO Conspiracy)**; Title 18,<br>U.S.C., Sec. 1955 — **Illegal<br>Gambling Business**; Title 18,<br>U.S.C., Sec. 1956(h) — **Money<br>Laundering Conspiracy**; Title 21,<br>U.S.C., Secs. 841(a)(1) and 846 –<br>**Conspiracy To Distribute<br>Narcotics**; Title 18, U.S.C.,<br>Secs. 981(a)(1)(C), 982, 1955(d),<br>and 1963, Title 21, U.S.C.,<br>Sec. 853, and Title 28, U.S.C.,<br>Sec. 2461(c) — **Criminal Forfeiture** |

The grand jury charges:

//

APY:MWP:BJK:nlv(2):San Diego
1/12/16

**THE OWEN HANSON GAMBLING/DRUG ENTERPRISE ("ODOG ENTERPRISE")**

At all times material to this Indictment:

    1.    Defendants OWEN HANSON, LUKE FAIRFIELD, KENNY HILINSKI, GIOVANNI BRANDOLINO, DANIEL PORTLEY-HANKS, JACK RISSELL, DEREK LOVILLE and others constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter collectively referred to as the "ODOG ENTERPRISE"), that is, a group of individuals associated-in-fact.

### Organization Roles

    2.    The ODOG ENTERPRISE had the following organizational structure, with various members, employees, and associates occupying the following roles:

    a.    OWEN HANSON is founder and leader of ODOG ENTERPRISE. He controlled ODOG ENTERPRISE's operations by exercising decision making authority, and through, in part, the delegation of operational duties to defendants GIOVANNI BRANDOLINO, KENNY HILINSKI, LUKE FAIRFIELD, and DANIEL PORTLEY-HANKS, as well as others.

    b.    LUKE FAIRFIELD was a resident of San Diego, California and a Certified Public Accountant ("CPA") licensed in the State of California. FAIRFIELD assisted OWEN HANSON with laundering illegal proceeds generated by the ODOG ENTERPRISE by setting up shell companies, assisting "runners" with opening bank accounts for the shell companies, and assisting members of the organization with avoiding bank reporting requirements and detection by law enforcement.

    c.    GIOVANNI BRANDOLINO, aka "Tank" was a resident of Los Angeles, California. BRANDOLINO oversaw portions of the enterprise's domestic drug trafficking operation, and routinely executed domestic orders for narcotics. BRANDOLINO also dealt directly with several

1 | gambling clients, including accepted wagers from bettors and collected
2 | gambling debts.

3 |      d. Defendant KENNY HILINSKI was a resident of Lima, Peru.
4 | From Peru, HILINSKI oversaw the enterprise's telephone and Internet
5 | operations, resolved disputes between gambling customers and bookies,
6 | adjusted customers' lines of credit and online accounts, and tracked
7 | bookies' and runners' accounts.

8 |      e. DANIEL PORTLEY-HANKS was a resident of Los Angeles,
9 | California, and a private investigator licensed in the State of
10 | California. PORTLEY-HANKS oversaw and coordinated the enterprise's
11 | organization's enforcement operations by obtaining the personal
12 | information – including the names, addresses, and identities of family
13 | members – of delinquent gamblers and others, and provided that
14 | information to HANSON. PORTLEY-HANKS also coordinated threats and
15 | violent attacks on individuals who owed the organization money.

16 | **Illegal Drug Distribution Network**

17 |      f. DEREK LOVILLE, a resident of Scottsdale, Arizona, and
18 | others distributed illegal drugs and collected payment from customers
19 | throughout the United States.

20 | **Bookies**

21 |      g. ODOG ENTERPRISE conducted, financed, managed,
22 | supervised, directed, and owned BET ODOG INTERNATIONAL, an illegal
23 | gambling business involving sports bookmaking.

24 |      h. ODOG ENTERPRISE had various bookmakers ("bookies"), who
25 | recruited customers, paid off winning bets, collected on losing bets,
26 | and delivered payments to HANSON or one of the ODOG ENTERPRISE's
27 | runners. ODOG bookmakers included JIM MUSE, CHARLIE D'AGOSTINO, DYLAN
28 | ANDERSON, JEFF BELLANDI, CURTIS CHEN, JAMES DULEY, DEE FOXX, KHALID

3

1  PETRAS, RAHUL BHAGAT, DAVID KIPPER, BRYAN MATAYA, TODD OLDHAM, and

2  DANIEL ORTEGA.  Each bookie was responsible for a "package," which

3  refers to all the customer accounts managed by that bookie.

**Runners**

5       i.   ODOG ENTERPRISE used "runners" who transported illegal

6  drugs, and collected proceeds from illegal drug trafficking and

7  gambling.  These runners, such as CHARLIE D'AGOSTINO, MARYLN

8  VILLARREAL, and TIM BRYAN handled customer payments and collections

9  for both gambling and drug proceeds, maintained money caches, and

10 delivered the illegal proceeds to the leaders of the ODOG ENTERPRISE.

**Collectors**

12      j.   ODOG ENTERPRISE also employed "collectors" to

13 intimidate individuals who owed the ODOG ENTERPRISE money.  JACK

14 RISSELL, a resident of North Highlands, California, specialized in

15 more aggressive measures to obtain payment on gambling and

16 extortionate debts, using intimidation, threats, and violence.

17      3.   ODOG ENTERPRISE was engaged in, and its activities affected,

18 interstate and foreign commerce.

19      4.   ODOG ENTERPRISE constituted an ongoing organization, whose

20 members functioned as a continuing unit, for the common purpose of

21 achieving ODOG ENTERPRISE's objectives.

22      5.   Individual A, a resident of Los Angeles, California, is a

23 professional gambler.

24      6.   Individual B is a former member of the ODOG ENTERPRISE.

**OBJECTIVES OF THE ENTERPRISE**

26      7.   ODOG ENTERPRISE's objectives included the following:

27      a.   Enriching its leaders, members, and associates through

28 (1) importing, exporting, and distributing illegal drugs throughout

4

1 | the United States, Australia and elsewhere; (2) operating an illegal
2 | gambling business, and (3) practicing extortionate debt collection.

3 | **Count 1**

4 | **(RACKETEERING CONSPIRACY)**

5 | 8.   Paragraphs 1 through 7 are hereby realleged and incorporated
6 | by reference herein.

7 | 9.   Beginning at least as early as June 2011 and continuing up
8 | to and including January 12, 2016, within the Southern District of
9 | California and elsewhere, defendants OWEN HANSON, aka "O-Dog", LUKE
10 | FAIRFIELD, KENNY HILINSKI, GIOVANNI BRANDOLINO, aka "Tank", DANIEL
11 | PORTLEY-HANKS, JACK RISSELL, aka "Animal", DEREK LOVILLE, and others,
12 | being persons employed by and associated with the ODOG ENTERPRISE (as
13 | described above), which was engaged in, and the activities of which
14 | affected, interstate and foreign commerce, knowingly and intentionally
15 | conspired with each other, and with other persons, to violate
16 | Title 18, United States Code, Section 1962(c), that is, to conduct and
17 | participate, directly and indirectly, in the conduct of the ODOG
18 | ENTERPRISE's affairs through a pattern of racketeering activity
19 | involving multiple acts involving narcotics trafficking in violation
20 | of:

21 | a.   Title 21, United States Code, Section 841 (Distribution
22 |        and possession with intent to distribute illegal
23 |        narcotics);

24 | b.   Title 21, United States Code, Section 952 (Importation
25 |        of illegal narcotics);

26 | c.   Title 21, United States Code, Section 846 (Attempt and
27 |        conspiracy to distribute and import illegal narcotics);

28 | //

Multiple acts indictable under:

d. Title 18, United States Code, Section 894 (extortionate debt collection);

e. Title 18, United States Code, Section 1084 (transmission of wagering information);

f. Title 18, United States Code, Section 1952 (Travel Act/phone and Internet use in aid of racketeering enterprises);

g. Title 18, United States Code, Section 1955 (illegal gambling business);

h. Title 18, United States Code, Sections 1956 and 1957 (money laundering); and

Multiple acts involving gambling:

i. Cal. Penal Code § 337a (bookmaking).

10. It was a part of the conspiracy that each defendant agreed that a co-conspirator would commit at least two acts of racketeering activity in the conduct of ODOG ENTERPRISE's affairs.

## METHODS AND MEANS OF THE RACKETEERING CONSPIRACY

11. In furtherance of the racketeering conspiracy charged in Count 1, the means and methods used by defendants and their associates included, but were not limited to, the following:

a. Imported, exported, and distributed hundreds of kilograms of illegal narcotics, including but not limited to cocaine, throughout the United States, Australia and elsewhere.

b. Evaded detection by law enforcement by, among other things, laundering its illegal proceeds; setting up shell companies; communicating with encrypted devices; designing, obtaining, and operating vehicles that contained hidden compartments and "traps" to

6

1  conceal illegal narcotics and other drugs; and maintaining the
2  gambling enterprise's headquarters and the physical platform for its
3  Internet operations outside the United States.

4          c.   Ensured its customers' prompt payment of gambling debts
5  through the use of intimidation, threats, and violence;

6          d.   Enhanced its power and financial profits by promoting
7  ODOG ENTERPRISE's activities with customers and potential customers.

8          e.   Recruited gambling customers in the Southern District
9  of California and elsewhere and supplied the customers with account
10 numbers and passwords for accessing their gambling accounts on ODOG
11 ENTERPRISE's gambling websites, including www.betodog.com.   Bookies
12 instructed their customers that they could place bets with their
13 bookmaker, or by calling ODOG ENTERPRISE's toll-free numbers, or
14 through their online accounts on the ODOG ENTERPRISE's websites.

15         f.   Extended credit to new customers, so they could begin
16 sports betting without pre-funding their accounts.   ODOG ENTERPRISE
17 also provided further extensions of credit to existing customers, so
18 that those customers could wager larger amounts of money than their
19 prior extensions of credit allowed.

20         g.   Used facilities in interstate and foreign commerce,
21 such as mobile telephones and Internet websites, to facilitate its
22 drug trafficking, illegal bookmaking and gambling activities, and
23 extortionate debt collection.

24         h.   Fostered a violent reputation about its treatment of
25 delinquent gambling and drug customers, including through the use of
26 intimidation, threats, and violence against its customers, especially
27 when customers were late in paying their debts.

28

1         i.    Laundered its illegal drug and gambling proceeds using

2    various entities and persons that appeared to be unrelated to ODOG

3    ENTERPRISE, thereby concealing the true nature, source, and ownership

4    of those proceeds.

5                                **OVERT ACTS**

6        12.  In furtherance of the conspiracy and to accomplish the

7    objects of the conspiracy, the defendants and their co-conspirators

8    committed the following acts, among other, within the Southern

9    District of California, and elsewhere:

10               a.    On or about June 10, 2011, OWEN HANSON caused

11                   Individual A to transport approximately $1.5 million in

12                   drug trafficking proceeds from Sydney, Australia to Las

13                   Vegas, Nevada in the form of a casino check.

14               b.    In or about August 2011, OWEN HANSON threatened

15                   Individual A and Individual A's spouse with bodily harm

16                   if Individual A refused to transport an additional $2.5

17                   million in criminal from Australia to the United

18                   States.

19               c.    In or about August 2012, DANIEL PORTLEY-HANKS and JACK

20                   RISSELL caused packages containing photographs of

21                   Individual A's spouse and Individual A, and a printout

22                   of biographical information for Individual A,

23                   Individual A's spouse, and their family members to be

24                   sent Individual A's personal residence in order to

25                   threaten and intimidate Individual A into repaying $2.5

26                   million Individual A lost gambling.

27               d.    On or about October 20, 2012, DANIEL PORTLEY-HANKS sent

28                   OWEN HANSON an email entitled "Operation Shovel" that

1  included a photograph of Individual A's family
2  gravestone altered to suggest that Individual A would
3  die "very soon."

4    e.  Between in or about January 2013 and August 10, 2013,
5        DANIEL PORTLEY-HANKS and JACK RISSELL, acting at OWEN
6        HANSON's direction, caused the United States Postal
7        Service to deliver various threatening materials to
8        Individual A, including but not limited to a DVD that
9        portrayed a masked individual beheading two unknown
10       males with a chainsaw and a knife.   The DVD also
11       contained the message:   "If you don't pay us our money,
12       this will happen to you."

13   f.  On or about February 20, 2013, JACK RISSELL, acting at
14       OWEN HANSON's direction, physically assaulted an
15       individual in Minneapolis, Minnesota, because that
16       individual failed to repay a gambling debt.

17   g.  On or about March 24, 2014, OWEN HANSON sent LUKE
18       FAIRFIELD the following text regarding a bookie within
19       the organization: "[K] (liquor store) has some of my $.
20       He's gonna write a check to you for $37,000…Please take
21       the # off the 96k (cash I collected from [D.O.] loan)
22       and I'll keep having checks like this come in like this
23       so the 'paper trail' is there."

24   h.  On or about March 26, 2014, LUKE FAIRFIELD deposited a
25       check for $37,600 from a bookie into a bank account of
26       an entity used by the ODOG ENTERPRISE, at First
27       Republic Bank in San Diego, California.

28

f. On or about April 2, 2014, OWEN HANSON sent LUKE
FAIRFIELD an email stating, "I need to set up a new Tax
ID corporation or llc, what you think is better-for my
runner Want the name of the corporation or llc to be
'Big Dog Sports Memorabilia,' I will have his san
diego (po box address) tomorrow for you. Let me know
what else you need. My other guy is retiring-says he
can't handle the stress the banks give him, lol."

j. On or about April 15, 2014, LUKE FAIRFIELD instructed
Individual B to open a bank account for "Big Dog Sports
Memorabilia" and warned Individual B that Individual B
would only "get into trouble" if he deposited large
amounts of cash at once and that Individual B should
keep deposits "low to avoid SARs [suspicious activity
reports]."

k. On or about April 2, 2014, LUKE FAIRFIELD sent OWEN
HANSON an email stating he owned a "50 foot
catamaran...big, lots of room in hidden areas."

l. On or about September 24, 2014, DEREK LOVILLE
distributed illegal narcotics, supplied by OWEN HANSON,
to an individual in Phoenix, Arizona.

m. On or about September 26, 2014, DEREK LOVILLE
transferred $1,150 in drug trafficking proceeds to OWEN
HANSON via bank transfer.

n. On or about September 26, 2014, Individual B delivered
$18,000 in illegal gambling proceeds to MARLYN
VILLAREAL.

o.  On or about October 20, 2014, GIOVANNI BRANDOLINO and KENNY HILINSKI exchanged text messages about a gambling client that owed the ODOG ENTERPRISE a gambling debt. In response from BRANDOLINO about whether the individual would pay off the debt, HILINSKI responded "He will pay. I can tell his [sic] scared. Doesn't want the K T combo to come out again."

p.  On or about October 21, 2014 GIOVANNI BRANDOLINO and KENNY HILINSKI exchanged the following text messages about a gambling client:

> HILINSKI:      He needs to pay. He already [expletive] O[wen] in the past.
>
> BRANDOLINO:    Don't worry they will pay with cash or [expletive].

q.  On or about November 17, 2014, GIOVANNI BRANDOLINO, acting at OWEN HANSON's direction, sent 5 grams of cocaine and 15 capsules of ecstasy from Orange, California to a professional football player who was then located in Nashville, Tennessee.

r.  On or about February 27, 2015, an undercover agent provided MARLYN VILLARREAL with $28,000 in illegal gambling proceeds.

s.  On or about July 24, 2015, in San Diego California, TIM BRYAN collected $37,500 represented to be proceeds from criminal activity.

t.  On or about August 7, 2015, OWEN HANSON caused Rufus Rhone (charged elsewhere) to deliver more than five kilograms of cocaine to an undercover agent in San Diego County, California.

11

1       u.   On or about August 3, 2015, in San Diego, California,

2               TIM BRYAN accepted $45,000 represented to be proceeds

3               of criminal activity.

4       v.   On or about September 3, 2015, BRANDOLINO GIOVANNI

5               provided $50,000 cash in drug trafficking proceeds to

6               an undercover agent in New Jersey.

7       w.   On or about September 8, 2015, OWEN HANSON caused Rufus

8               Rhone to deliver more than five kilograms of

9               methamphetamine to an undercover agent who was located

10              in San Diego, California.

11  All in violation of Title 18, United States Code, Section 1962(d).

12  **Special Sentencing Factor**

13     13.   As to defendant OWEN HANSON, aka "O-Dog", it is further

14  alleged that the above-charged conspiracy involved at least five

15  kilograms of cocaine; a Schedule II Controlled Substance, in violation

16  of Title 21, United States Code, Section 841(b)(1)(A)(ii).

17  **Count 2**

18  **(ILLEGAL GAMBLING BUSINESS)**

19     14.   Paragraphs 1 through 7 are hereby realleged and incorporated

20  by reference herein.

21     15.   Beginning on a date unknown but at least as early as January

22  2012, and continuing up to and including January 12, 2016, within the

23  Southern District of California and elsewhere, defendants OWEN HANSON,

24  aka "O-Dog", LUKE FAIRFIELD, KENNY HILINKSKI, GIOVANNI BRANDOLINO, aka

25  "Tank", DANIEL PORTLEY-HANKS, JACK RISSELL, aka "Animal", CHARLIE

26  D'AGOSTINO, MARYLN VILLAREAL, DYLAN ANDERSON, TIM BRYAN, JIM MUSE,

27  JEFF BELLANDI, aka "Jazzy", CURTIS CHEN, JAMES DULEY, DEE FOXX, KHALID

28  PETRAS, RAHUL BHAGAT, DAVID KIPPER, BRYAN MATAYA, TODD OLDHAM, and

DANIEL ORTEGA, knowingly conducted, financed, managed, supervised, directed, and owned all and part of BET ODOG INTERNATIONAL, an illegal gambling business involving sports bookmaking, which gambling business was a violation of the law of the State of California in which it was conducted (in violation of California Penal Code, Section 337(a), and which involved at least five persons who conducted, financed, managed, supervised, directed, and owned all and part of BET ODOG INTERNATIONAL, and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day; in violation of Title 18, United States Code, Section 1955.

### Count 3

### (MONEY LAUNDERING CONSPIRACY)

16. Paragraphs 1 through 7 are hereby realleged and incorporated by reference herein.

17. Beginning at least as early as June 2011 and continuing up to and including January 12, 2016, within the Southern District of California and elsewhere, defendant OWEN HANSON, aka "O-Dog", LUKE FAIRFIELD, KENNY HILINSKI, GIOVANNI BRANDOLINO, aka "Tank", CHARLIE D'AGOSTINO, MARLYN VILLAREAL, DYLAN ANDERSON, TIM BRYAN, JEFF BELLANDI, aka "Jazzy", and others knowingly and intentionally conspired:

a. to conduct financial transactions affecting interstate and foreign commerce that involve the proceeds of specified unlawful activity, to wit illegal drug distribution proceeds and illegal gambling proceeds, knowing that the property involved in these financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in

13

1  whole and in part to conceal and disguise the nature, the location,
2  the source, the ownership, and the control of the proceeds of the
3  specified unlawful activity, in violation of Title 18, United States
4  Code, Section 1956(a)(1)(B)(i);

5        b.  to  transport,  transmit,  and  transfer  monetary
6  instruments and funds from a place in the United States to and through
7  a place outside the United States, with the intent to promote the
8  carrying on of specified unlawful activity, to wit illegal drug
9  distribution and illegal gambling, in violation of Title 18,
10 United States Code, Section 1956(a)(2)(A);

11       c.  to  engage  in  monetary  transactions  in  criminally
12 derived property of a value greater than $10,000, derived from
13 specified unlawful activity, to wit illegal drug distribution and
14 illegal gambling, in and affecting interstate and foreign commerce,
15 in violation of Title 18, United States Code, Section 1957.

16          **METHODS AND MEANS OF THE MONEY LAUNDERING CONSPIRACY**

17    18.  In furtherance of the money laundering conspiracy charged in
18 Count 3, the co-conspirators used the following methods and means,
19 among others:

20             a.  directed runners, including defendants MARLYN
21                 VILLAREAL, DYLAN ANDERSON, and TIM BRYAN, to
22                 collect gambling debts and drug proceeds from
23                 customers in the Central and Southern Districts of
24                 California, and to launder the illegal drug and
25                 gambling proceeds;

26             b.  directed runners to open bank accounts in the name
27                 of fictitious companies controlled by OWEN HANSON

28

1    and HILINSKI to hold the proceeds of the illegal
2    drug and gambling activities;

3        c.    wired proceeds of drug trafficking activities into
4              bank accounts in the names of fictitious companies
5              controlled by OWEN HANSON and KENNY HILINSKI; and

6        d.    transported    proceeds    of    drug    trafficking
7              activities from Australia and other countries, to
8              the United States.

9    All in violation of Title 18, United States Code, Section 1956(h).

10                              **Count 4**

11            **(CONSPIRACY TO DISTRIBUTE ILLEGAL NARCOTICS)**

12       19.   Beginning in or about January 2014, and continuing up to and
13   including September 8, 2015, within the Southern District of
14   California, and elsewhere, defendants OWEN HANSON, aka "O-Dog",
15   GIOVANNI BRANDOLINO, aka "Tank", DEREK LOVILLE, and others, knowingly
16   and intentionally conspired to distribute illegal narcotics, to wit:
17   (a) methamphetamine, a Schedule I Controlled Substance; (b) heroin, a
18   Schedule I Controlled Substance; (c) cocaine, a Schedule II Controlled
19   Substance; and (d) and methylenedioxyamphetamine (MDMA), also known as
20   "ecstasy," a Schedule I Controlled Substance; all in violation of
21   Title 21, United States Code, Sections 841(a)(1) and 846.

22                       **Special Sentencing Factor**

23       20.   As to defendant OWEN HANSON, aka "O-Dog", it is further
24   alleged that the above-charged conspiracy involved at least five
25   kilograms of cocaine; in violation of Title 21, United States Code,
26   Section 841(b)(1)(A)(ii).

27   //
28   //

                                    15

## Forfeiture Allegation 1

### (RACKETEERING CONSPIRACY FORFEITURE)

21. The allegations contained in Count 1 and Paragraphs 1 through 8 are hereby realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States under Title 18, United States Code, Section 1963.

22. Upon conviction of the offense alleged in Count 1 of this Superseding Indictment, defendants OWEN HANSON, aka "O-Dog", KENNY HILINSKI, LUKE FAIRFIELD, GIOVANNI BRANDOLINO, aka "Tank", DANIEL PORTLEY-HANKS, and JACK RISSELL, aka "Animal", shall forfeit to the United States, all rights, titles, and interests:

    a. acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(1);

    b. an interest in, security of, claims against, and property and contractual rights affording a source of influence over ODOG ENTERPRISE, which these defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(2); and

    c. property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(3).

23. The interests of said defendants subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to at least $5,000,000 and all interests and proceeds traceable thereto, including but not limited to the following assets:

| Bank | Account Ending | Name on Account |
|------|----------------|-----------------|
| U.S. Bank | x3665 | Coral Music Group |
| U.S. Bank | x7044 | 310 Development |
| Wells Fargo | x9091 | ATM Unlimited |
| Wells Fargo | x4622 | Kenny Hilinski |

## Substitute Property Forfeiture

24. If any of the above-described forfeitable property, as a result of any act or omission of said defendants —

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendants up to the value of the property listed above as being subject to forfeiture.

25. Said defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above. All pursuant to Title 18, United States Code, Section 1963.

## Forfeiture Allegation 2

### (ILLEGAL GAMBLING BUSINESS FORFEITURE)

26. The allegations contained in Count 2 and Paragraphs 1 through 4 are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America under Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c).

27. Upon conviction of the offense alleged in Count 2 of this Superseding Indictment and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), Title 28, United States Code, Section 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure, defendant defendants OWEN HANSON, aka "aka O-Dog", LUKE FAIRFIELD, KENNY HILINKSKI, GIOVANNI BRANDOLINO, aka "Tank", DANIEL PORTLEY-HANKS, JACK RISSELL, aka "Animal", CHARLIE D'AGOSTINO, MARLYN VILLAREAL, DYLAN ANDERSON, TIM BRYAN, JIM MUSE, JEFF BELLANDI, aka "Jazzy", CURTIS CHEN, JAMES DULEY, DEE FOXX, KHALID PETRAS, RAHUL BHAGAT, DAVID KIPPER, BRYAN MATAYA, TODD OLDHAM, and DANIEL ORTEGA shall forfeit to the United States any property, real or personal, which constitutes or was derived from proceeds traceable to such violation and all property, including money, used in violation of Title 18, United States Code, Section 1955, including, but not limited to, not less than $5,000,000 and all the accounts and interests described in paragraph 22 above.

//
//
//
//
//

1                     **Substitute Property Forfeiture**

2      28.  If any of the above-described forfeitable property, as a

3 result of any act or omission of said defendants —

4            a.  cannot be located upon the exercise of due diligence;

5            b.  has been transferred or sold to, or deposited with, a

6 third party;

7            c.  has been placed beyond the jurisdiction of the Court;

8            d.  has been substantially diminished in value; or

9            e.  has been commingled with other property which cannot be

10 subdivided without difficulty;

11 it is the intent of the United States, pursuant to Title 28, United

12 States Code, Section 2461(c), incorporating Title 21, United States

13 Code, Section 853(p), to seek forfeiture of any other property of said

14 defendants up to the value of the property listed above as being

15 subject to forfeiture.

16 All pursuant to Title 18, United States Code, Sections 981(a)(1)(C),

17 1955(d), and Title 28, United States Code, Section 2461(c).

18                     **Forfeiture Allegation 3**

19            **(MONEY LAUNDERING CONSPIRACY FORFEITURE)**

20      29.  The allegations contained in Count 3 and Paragraphs 1

21 through 4 are realleged and by their reference fully incorporated

22 herein for the purpose of alleging forfeiture to the United States of

23 America under Title 18, United States Code, Section 982(a)(1).

24      30.  Upon conviction of the offense alleged in Count 3 of this

25 Superseding Indictment and pursuant to Title 18, United States Code,

26 Section 982(a)(1), and Rule 32.2, Federal Rules of Criminal Procedure,

27 defendant defendants OWEN HANSON, aka "O-Dog", LUKE FAIRFIELD, KENNY

28 HILINSKI, CHARLIE D'AGOSTINO, MARLYN VILLAREAL, DYLAN ANDERSON, and

1  TIM BRYAN, shall forfeit to the United States all property, real and
2  personal, which was involved in such offense, shall, upon conviction,
3  forfeit to the United States any and all property constituting, or
4  derived from, any proceeds that the defendants obtained, directly or
5  indirectly, as the result of the offense, and any and all property
6  used or intended to be used in any manner or part to commit and to
7  facilitate the commission of the violation alleged in and property
8  traceable to such property, including but not limited to: at least
9  $5,000,000 and all interests and proceeds traceable thereto, including
10 but not limited to:

| Bank | Account Ending | Name on Account |
|------|----------------|-----------------|
| U.S. Bank | x3665 | Coral Music Group |
| U.S. Bank | x7044 | 310 Development |
| Wells Fargo | x9091 | ATM Unlimited |
| Wells Fargo | x4622 | Kenny Hilinski |

### Substitute Property Forfeiture

19     31.  If any of the above-described forfeitable property, as a
20 result of any act or omission of said defendants —

21          a.   cannot be located upon the exercise of due diligence;

22          b.   has been transferred or sold to, or deposited with, a
23 third party;

24          c.   has been placed beyond the jurisdiction of the Court;

25          d.   has been substantially diminished in value; or

26          e.   has been commingled with other property which cannot be
27 subdivided without difficulty;

28

1  it is the intent of the United States, pursuant to Title 21,

2  United States Code, Section 853(p), and Title 18, United States Code,

3  Section 982(b), to seek forfeiture of any other property of said

4  defendants up to the value of the property listed above as being

5  subject to forfeiture.

6  ## Forfeiture Allegation 4

7  ### (DRUG CONSPIRACY FORFEITURE)

8  32.   The allegation contained in Count 4 is hereby realleged and

9  by its reference fully incorporated herein for the purpose of alleging

10  forfeiture to the United States of America pursuant to the provisions

11  of Title 21, United States Code, Section 853.

12  33.   As a result of the commission of the felony offense alleged

13  in Count 4 of this indictment, said violation being punishable by

14  imprisonment for more than one year and pursuant to Title 21, United

15  States Code, Sections 853(a)(1) and 853(a)(2), defendants OWEN HANSON,

16  aka "O-Dog", GIOVANNI BRANDOLINO, aka "Tank", and DEREK LOVILLE shall,

17  upon conviction, forfeit to the United States any and all property

18  constituting, or derived from, any proceeds that the defendants

19  obtained, directly or indirectly, as the result of the offense, and

20  any and all property used or intended to be used in any manner or part

21  to commit and to facilitate the commission of the violation alleged in

22  Count 4 of this Superseding Indictment.

23  34.   If any of the above-described forfeitable property, as a

24  result of any act or omission of the defendants:

25        (a)   cannot be located upon the exercise of due diligence;

26        (b)   has been transferred or sold to, or deposited with, a

27  third party;

28  //

1    (c)   has been placed beyond the jurisdiction of the Court;

2    (d)   has been substantially diminished in value; or

3    (e)   has been commingled with other property which cannot be

4  subdivided without difficulty;

5  it is the intent of the United States, pursuant to Title 21, United

6  States Code, Section 853(p), to seek forfeiture of any other property

7  of the defendant up to the value of the said property listed above as

8  being subject to forfeiture, all in violation of Title 21, United

9  States Code, Section 853.

10 All pursuant to Title 18, United States Code, Sections 981(a)(1)(C),

11 982, 1955(d), and 1963, Title 21, United States Code, Section 853, and

12 Title 28, United States Code, Section 2461(c).

13    DATED:  January 12, 2016.

14                                          A TRUE BILL:

15

16                                          Foreperson

17 LAURA E. DUFFY
   United States Attorney

18

19 By:

20    ANDREW P. YOUNG
      Assistant U.S. Attorney

21                                          I attest and certify on 1/13/2016
                                            that the foregoing document is a full, true and correct
22 By:                                      copy of the original on file in my office and in my legal
                                            custody.
23    MARK PLETCHER
      Assistant U.S. Attorney              CLERK, U.S. DISTRICT COURT
                                           SOUTHERN DISTRICT OF CALIFORNIA
24
                                           By                                Deputy
25 By:

26    BENJAMIN J. KATZ
      Assistant U.S. Attorney

27

28